*In re* APPLICATION OF THE DU PAGE COUNTY COLLECTOR, for Judgment and Sale for Taxes Against Real Estate Delinquent for Nonpayment of General Taxes for the Year 1985 (John Lotus Novak, Du Page County Treasurer and *ex officio* Collector, Applicant-Appellant, v. Application Engineering *et al.*, Objectors-Appellees).

Second District   Nos. 2—90—1288 through 2—90—1290 cons.

Opinion filed April 13, 1993.

James E. Ryan, State's Attorney, of Wheaton (Anna B. Harkins, Barbara A. Preiner, and George J. Sotos, Assistant State's Attorneys, of counsel), for appellant.

Joseph J. Butler, of Crane & Norcross, of Chicago, and James A. Gerahty, of Wheaton, for appellee Application Engineering.

Ralph C. Putnam, Jr., of Alschuler, Putnam, McWethy, Funkey & Lewis, P.C., of Aurora, for appellee Jewel Companies.

JUSTICE UNVERZAGT delivered the opinion of the court:

The *ex officio* Du Page County collector (the collector) appeals from three orders entered by the circuit court of Du Page County on October 23, 1990. The orders directed the collector to refund that portion of the county's real estate tax levy deemed excessive, plus interest, to each of three tax objectors. The three tax objectors were Application Engineering, Jewel Companies, Inc., and Inland Real Estate Corp. (taxpayers). The three cases were consolidated for purposes of appeal.

The issue on appeal is whether the county could exclude its liability insurance tax levy from its general corporate tax levy effectively circumventing the maximum rate limitation placed on general corporate tax levies by section 25.05 of "An Act to revise the law in relation to counties" (Counties Act) (Ill. Rev. Stat. 1983, ch. 34, par. 406).

On December 17, 1991, this court, after concluding that the trial court orders did not meet the requirements of Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)), ordered the dismissal of the appeal for want of jurisdiction. (*In re Application of the Du Page County Collector* (2d Dist. 1991), Nos. 2—90—1288, 2—90—1289 and 2—90—1290 (unpublished order under Supreme Court Rule 23).) However, the supreme court reversed our order and remanded the case for consideration of the issue raised on appeal. *In re Application of the Du Page County Collector* (1992), 152 Ill. 2d 533.

The facts are not in dispute. Each of the taxpayers owned real estate in Du Page County and timely paid its 1985 county real estate taxes under protest in 1986. Each of the taxpayers made various objections to the county real estate tax levy including a specific objection to the levy for liability insurance on the ground that the rate ex-

tended for liability insurance caused the county's general corporate tax rate to exceed the statutory maximum rate.

For 1985, the tax year in question, the county did not include the liability insurance rate in its general corporate rate. The general corporate rate levied by the county for that year was .1175% and the liability insurance rate was .0295%. If the county had included the liability insurance rate in its general corporate rate, then the general corporate rate would have been .1470% and would have exceeded the statutory maximum rate of .12% by .027%. There was no referendum approving liability insurance taxes in excess of the general corporate maximum rate.

The trial court found that the county could not exclude the liability insurance rate from its general corporate rate. The trial court also found that the county levy for liability insurance was "illegal, excessive and void" to the extent the general corporate tax rate would have exceeded the maximum rate if the liability insurance rate had been included in the general corporate rate—.027 per hundred dollars of valuation. The trial court ordered the collector to refund the amount of the liability insurance tax deemed excessive plus interest (stayed pending appeal) to each of the taxpayers.

The collector appeals these orders. The only issue before us is whether the trial court erred when it sustained the taxpayers' objections after finding that the county could not exclude its liability insurance rate from its general corporate rate.

In 1985, in addition to setting the maximum general corporate tax rate for counties such as Du Page County at .12%, section 25.05 of the Counties Act listed a number of taxes which were exempt from and exceptions to the maximum rate. (Ill. Rev. Stat. 1983, ch. 34, par. 406 (now Ill. Rev. Stat. 1989, ch. 34, par. 5—1024).) Section 25.05 did not include liability insurance taxes in its list of exceptions to the general corporate tax maximum rate. Ill. Rev. Stat. 1983, ch. 34, par. 406.

■ Section 27 of the Counties Act provided that a county could authorize a tax exceeding the section 25.05 maximum rate. (Ill. Rev. Stat. 1983, ch. 34, par. 501 (now Ill. Rev. Stat. 1989, ch. 34, par. 5—2001).) However, section 27 provided that a county could only authorize a tax in excess of the section 25.05 general corporate tax maximum rate after a majority of the voters in the county specifically approved an excess tax in a referendum. Ill. Rev. Stat. 1983, ch. 34, par. 501.

■ Section 9—107 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat.

1985, ch. 85, par. 2—101 *et seq.*) provided that a county may levy liability insurance taxes. (Ill. Rev. Stat. 1985, ch. 85, par. 9—107.) The Tort Immunity Act also provided that taxes levied under its authority, including liability taxes, "shall be exclusive of and in addition to the amount of tax [a county] is now or may hereafter be authorized to levy for general purposes under any statute which may limit the amount of tax which [a county] may levy for general purposes." Ill. Rev. Stat. 1985, ch. 85, par. 9—107.

The collector contends that this Tort Immunity Act language clearly places liability insurance taxes outside the limitations of section 25.05. The collector argues that the principal case relied on by the trial court in reaching a contrary conclusion (*People ex rel. Nordstrom v. Chicago & North Western Ry. Co.* (1957), 11 Ill. 2d 99) (*Nordstrom I*) was incorrectly decided and is distinguishable from this case. We disagree.

■■ There are three distinct means of properly excluding a county tax from the rate limitations of section 25.05 of the Counties Act. First, a county may levy a tax in excess of the limit fixed by section 25.05 after a favorable vote at a referendum under section 27. (Ill. Rev. Stat. 1983, ch. 34, par. 501; *People ex rel. Nordstrom v. Chicago, Burlington & Quincy R.R. Co.* (1959), 15 Ill. 2d 602, 604 (*Nordstrom II*).) Second, the legislature may exempt a tax from the limitation of section 25.05 by clearly and expressly excluding the tax in section 25.05 itself. (See Ill. Rev. Stat. 1983, ch. 34, par. 406.) Third, the legislature may exclude the tax "by equally clear language found in acts authorizing the tax but which acts are independent of the Counties Act." *People ex rel. Ramey v. Gulf, Mobile & Ohio R.R. Co.* (1958), 15 Ill. 2d 126, 130.

Here, there was no referendum under section 27, and the legislature did not exclude liability taxes from the section 25.05 limitations by any language in section 25.05 itself. Thus the question before us is whether language in the Tort Immunity Act clearly and expressly excluded liability taxes from the section 25.05 limitation.

In *Nordstrom I*, our supreme court determined that the language of "An Act relating to the care and treatment by counties of persons afflicted with tuberculosis * * *." (County TB Act) (Ill. Rev. Stat. 1951, ch. 34, pars. 164 through 175i9) did not authorize a county to exclude a tax levied under the County TB Act from the section 25.05 limitation on general corporate taxes. (*Nordstrom*, 11 Ill. 2d at 104.) The court concluded that the language of the County TB Act did not manifest an intention on the part of the legislature that the tax should be

exempt from the section 25.05 limitation. (*Nordstrom*, 11 Ill. 2d at 105.) The relevant language from the County TB Act provides:

" 'The County Board of each County in this State shall have the power to provide for the care and treatment of the inhabitants thereof who may be afflicted with tuberculosis and to levy a tax not to exceed .075 per cent of the full and fair cash value as equalized or assessed by the Department of Revenue annually on all taxable property of such county, such tax to be levied and collected in like manner with general taxes of such county and to form, when collected, a fund to be known as the "Tuberculosis Care and Treatment Fund," which tax *shall be in addition to, in excess of and excluded from all other taxes which such county is now or hereafter may be, authorized to levy, on the aggregate valuation of all property within such county,* and *the county clerk in reducing tax levies* under the provisions of Section 162 of "An Act to revise the law in relation to the assessment of property and the levy and collection of taxes, and to repeal certain Acts herein named," filed May 17, 1939, as amended, *shall not consider the tax for said tuberculosis care and treatment fund, authorized by this Act, as part of the general tax levy for county purposes, and shall not include the same in the limitation* of one (1) per cent of the assessed valuation upon which taxes are required to be extended.' " (Emphasis added.) *Nordstrom*, 11 Ill. 2d at 102, quoting Ill. Rev. Stat. 1951, ch. 34, par. 175i1.

*Nordstrom I* also discussed language in "An Act authorizing counties to levy a tax for the purpose of maintaining public non-sectarian hospitals" (Ill. Rev. Stat. 1985, ch. 34, par. 5351) (the Nonsectarian Hospital Act) which had been considered by the court in an earlier decision (*People ex rel. Harrell v. Baltimore & Ohio R.R. Co.* (1951), 411 Ill. 55). The language in question provided, in relevant part, that the related tax "shall not be included in any tax limitation of rate upon which taxes are required to be extended but shall be excluded therefrom and in addition thereto." (Ill. Rev. Stat. 1989, ch. 34, par. 5—7001.) The *Harrell* court held that these words did not exempt the tax from section 25.05. *Nordstrom*, 11 Ill. 2d at 106.

The comparable language in the Tort Immunity Act provides:

"Any tax levied under this Section shall be levied and collected in like manner with the general taxes of the entity and *shall be exclusive of and in addition to the amount of tax that entity is now or may hereafter be authorized to levy for general purposes under any statute which may limit the amount of tax*

*which that entity may levy for general purposes. The county clerk* of the county in which any part of the territory of the local taxing entity is located, *in reducing tax levies* under the provisions of any Act concerning the levy and extension of taxes, *shall not consider any tax provided for by this Section as a part of the general tax levy for the purposes of the entity nor include such tax within any limitation* of the percent of the assessed valuation upon which taxes are required to be extended for such entity." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 85, par. 9—107.

■ A comparison of the language in the County TB Act and the Nonsectarian Hospital Act with the language in the Tort Immunity Act shows many similarities in language and a parallel structure between the County TB Act and the Tort Immunity Act. The first set of key words is "shall be in addition to, in excess of and excluded from all other taxes which the county is now or hereafter may be, authorized to levy" in the County TB Act (Ill. Rev. Stat. 1951, ch. 34, par. 175i1), and "shall be exclusive of and in addition to the amount of tax that entity is now or may hereafter be authorized to levy for general purposes" in the Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, par. 9—107). In *Nordstrom I*, the court stated that the words "in addition to" in the County TB Act meant only that the tax "shall be in addition to other taxes authorized by the General Assembly, and not subject to reduction with other taxes." (*Nordstrom*, 11 Ill. 2d at 104.) The court also said that the words "in excess of and excluded from" in the County TB Act related to provisions for reducing levies and not the "overall rate limitation." *Nordstrom*, 11 Ill. 2d at 105.

The comparable Tort Immunity Act language is virtually identical to the County TB Act language, and we must therefore construe it as our supreme court construed it in *Nordstrom I*. Accordingly, we conclude that the Tort Immunity Act language relates only to the provisions for reducing taxes.

Next, we compare the language of the Nonsectarian Hospital Act "shall not be included in any tax limitation of rate upon which taxes are required to be extended" (Ill. Rev. Stat. 1985, ch. 34, par. 5351), and the remaining relevant language of the Tort Immunity Act, "under any statute which may limit the amount of tax which that entity may levy for general purposes" (Ill. Rev. Stat. 1985, ch. 85, par. 9—107). Although the language in the two acts is not identical, we find that the gist of the language, that limitations on rates shall not apply, is the same. *Nordstrom I* noted with approval that *Harrell* held that the Nonsectarian Hospital Act language did not authorize a tax in ex-

cess of the general corporate maximum rate. (*Nordstrom*, 11 Ill. 2d at 106.) We see nothing in the Tort Immunity Act language to place it outside the control of *Nordstrom I* and *Harrell*. We therefore conclude that the Tort Immunity Act language does not authorize a tax in excess of the maximum county rate.

*Ramey* supports our conclusion. In order for the legislature to authorize an exception to the section 25.05 limitation through an independent statute, the language of the independent statute must be "equally clear" as the language in the list of exceptions in section 25.05 itself. (*Ramey*, 15 Ill. 2d at 130.) Virtually every exception listed within section 25.05 identifies the specific statute by name and statutory code number and gives the date the statute was authorized or amended. (See Ill. Rev. Stat. 1983, ch. 34, par. 406.) Here, the Tort Immunity Act language does not identify a specific statute by name, code number or date. Thus, the Tort Immunity Act does not exempt its taxes from the section 25.05 limitation because it does not use language equally clear as the language of section 25.05 itself. The legislature must have been aware of the section 25.05 limitation when it passed the Tort Immunity Act and could have specifically identified the section 25.05 limitation in the Tort Immunity Act but it has not done so. In the absence of such a specific identification, *Nordstrom I* applies.

Our conclusion is further supported by the well-established principle that tax statutes should be strictly construed in favor of taxpayers and against the government. *Ramey*, 15 Ill. 2d at 129.

Based on the foregoing, we hold that the language of section 9—107 of the Tort Immunity Act does not exclude county liability insurance taxes from the maximum rate limitation on a county's general corporate tax rate imposed by section 25.05 of the Counties Act. Accordingly, we find that the trial court properly sustained the taxpayers' objections.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

BOWMAN and QUETSCH, JJ., concur.